```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                    )
SUSAN FLAHERTY, ROBERT              )
FLAHERTY, and DANIEL FLAHERTY,      )
                                    )
          Plaintiffs,               )
                                    )
v.                                  )
                                    )   Civil Action
AMIGOS DEL MAR LTD. d/b/a           )   No. 20-cv-11485-PBS
AMIGOS DEL MAR DIVE SHOP,           )
AMIGOS DEL MAR LTD. as owners       )
of the vessel M/V PAPA CHANGA,      )
                                    )
          Defendant.                )
_____)
```

## MEMORANDUM AND ORDER

July 30, 2025

Saris, J.

### INTRODUCTION

In 2020, Plaintiffs Susan, Robert, and Daniel Flaherty filed an amended complaint alleging various maritime torts against Defendant Amigos Del Mar Dive Shop ("Amigos") after a diving accident involving a vessel operated by Amigos off the coast of Belize. When Amigos failed to appear despite notice of the suit, the Court held an evidentiary hearing and entered default judgment.

Two years after the amended judgment issued, Amigos filed its first motion to vacate. The Court denied the motion without prejudice to allow for limited jurisdictional discovery. Now that discovery has concluded, Amigos renews its motion to vacate the

1

default judgment pursuant to Federal Rule of Civil Procedure 60(b)(4), arguing that the Court lacked subject matter and personal jurisdiction.

After a non-evidentiary hearing, the Court **DENIES** Amigos' renewed motion to vacate (Dkt. 70).

## FACTUAL BACKGROUND

Based on the evidentiary record developed during jurisdictional discovery, the Court finds that the following facts are likely true.

### I. The Parties

Plaintiffs Susan and Robert Flaherty, along with their son, Daniel, reside in North Andover, Massachusetts.

Amigos is a foreign company with its principal place of business in Ambergris Caye, Belize. Jose Paz, a Belize resident, is Amigos' founder, director, and controlling shareholder.

Amigos promotes its scuba diving services through a website, Facebook, and Instagram. Amigos' website lists dive prices in U.S. dollars, and approximately 85% to 90% of its customers are from the United States.

### II. The Facts Surrounding the Suit

In 2019, Plaintiffs planned a trip to Belize. While still in Massachusetts, Susan Flaherty contacted Anthony Carballo via Facebook Messenger to arrange a scuba diving trip. Carballo, a Belize resident, had known the Flaherty family for around eight

years. When Susan inquired whether he still worked for his former diving company, he responded that he now worked for Amigos. Susan then requested Amigos' price list, which Carballo provided. She also inquired about cash discounts and whether she could request Carballo as her dive guide. Carballo replied that he would check and follow up. He later confirmed that Amigos offered cash discounts and that he could accompany the Flahertys on their dive.

On May 21, 2019, while in Belize, Plaintiffs participated in a recreational scuba dive excursion operated by Amigos. The vessel's operator navigated the boat to a dive site known as "Tackle Box." According to a map produced by Amigos, Tackle Box is roughly one mile from shore, just past the barrier reef. During the dive trip, an Amigos employee, who was not a certified dive master, pushed Susan into the water while the vessel's propellers were still engaged. Susan was pulled under the boat, where the engaged propellers severely injured her foot, ankle, and knee.

### III. **The Facts of the Default**

Plaintiffs commenced this action in 2020. On September 23, 2020, Plaintiffs filed an amended complaint asserting claims under general maritime law. See 28 U.S.C. § 1333(1). On November 9, 2020, Plaintiffs served Amigos with the amended complaint pursuant to the Hague Convention, and Jose Paz signed the proof of service, indicating that it was received voluntarily. Amigos failed to respond. On June 21, 2021, the Court entered a notice of default.

Four months later, the Court held an evidentiary hearing to assess Plaintiffs' damages and provided Amigos with notice. Once again, Amigos did not appear. On February 23, 2022, the Court entered an amended judgment awarding Plaintiffs $6,238,322.72 in damages in addition to pre- and post-judgment interest.

Two years later, Amigos appeared and moved to vacate the default judgment. The Court denied the motion without prejudice and allowed limited jurisdictional discovery. Now before the Court is Amigos' renewed motion to vacate (Dkt. 70).

## LEGAL STANDARD

Once a default judgment has entered, a defendant may seek relief under Federal Rule of Civil Procedure 60(b). See Fed. R. Civ. P. 55(c). Under Rule 60(b)(4), a court must relieve a party from final judgment when "the judgment is void." Fed. R. Civ. P. 60(b)(4). Plaintiffs devote considerable space in their briefing to arguing that Amigos failed to bring its motion to vacate within a "reasonable time" and that this delay has prejudiced Plaintiffs. But, in this Circuit, "Rule 60(b)(4) motions cannot be denied on the procedural ground that they were not brought within a 'reasonable time' as required under Rule 60(b)." Sea-Land Serv., Inc. v. Ceramica Europa II, Inc., 160 F.3d 849, 852 (1st Cir. 1998).[1] If the judgment is void, the "district court has no

---

[1] The Supreme Court granted certiorari on June 6, 2025, in Coney Island Auto Parts Unlimited, Inc. v. Burton, Chapter 7 Trustee for

4

discretion . . . because a judgment is either void or it is not." Shank/Balfour Beatty v. Int'l Bhd. of Elec. Workers Loc. 99, 497 F.3d 83, 94 (1st Cir. 2007) (quoting Fafel v. DiPaola, 399 F.3d 403, 409-10 (1st Cir. 2005)).

A judgment is void for want of jurisdiction in "only rare instances of a clear usurpation of power," not "simply because it is or may have been erroneous." United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270-71 (2010) (first quoting United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661-62 (1st Cir. 1990); and then quoting Hoult v. Hoult, 57 F.3d 1, 6 (1st Cir. 1995)). Put differently, relief under Rule 60(b)(4) is reserved "only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." Id. at 271 (quoting Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir. 1986)). Amigos argues that the "arguable basis" standard applies only where a party has collaterally attacked a judgment without pursuing a direct appeal and not in cases like this one, where the party defaulted. That reading, however, is inconsistent with First Circuit precedent. See Carrasquillo-Serrano v. Municipality of Canovanas, 991 F.3d 32, 39 (1st Cir. 2021) (applying the arguable

---

Vista-Pro Automotive, LLC, No. 24-808, to resolve a circuit split on whether Rule 60(c)(1)'s "reasonable time" limitation applies to motions under Rule 60(b)(4). In that case, the Sixth Circuit applied the reasonable-time requirement to such a jurisdictional challenge. If that were the rule here, the Court would find the time that has elapsed renders Amigos' motion to vacate untimely.

5

basis standard to a Rule 60(b)(4) motion brought by a defaulting defendant).

## DISCUSSION

Amigos argues the default judgment is void and relief is warranted under Rule 60(b)(4) because the Court lacked subject matter and personal jurisdiction when it entered default judgment. The Court addresses each jurisdictional argument in turn.

### I. Subject Matter Jurisdiction

Plaintiffs invoke the Court's subject matter jurisdiction under 28 U.S.C. § 1333(1), which vests federal courts with "original jurisdiction" over "[a]ny civil case of admiralty or maritime jurisdiction." To determine whether a tort claim falls within § 1333(1), the Supreme Court has articulated a two-part test. First, the location requirement asks "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). Second, the connection requirement considers "whether the incident has 'a potentially disruptive impact on maritime commerce'" and "whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Id. (quoting Sisson v. Ruby, 497 U.S. 358, 364 n.2, 365 (1990)). Amigos contends that Plaintiffs' claims fail both prongs.

6

### A. Location Requirement

Amigos argues that since the incident occurred at the Tackle Box site, within the navigable waters of Belize, maritime jurisdiction does not apply.

A district court's jurisdiction under § 1333(1) may extend to torts arising in foreign territorial waters. As early as 1897, "the law [was] entirely well settled . . . that torts originating within the waters of a foreign power may be the subject of a suit in a domestic court." Pan. R. Co. v. Napier Shipping Co., 166 U.S. 280, 285 (1897) (emphasis added). Other courts have taken this view. See, e.g., Carey v. Bah. Cruise Lines, 864 F.2d 201, 207 n.4 (1st Cir. 1988) (finding the location test met for torts occurring on a vessel off the coast of Mexico); Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 902 (11th Cir. 2004) (exercising admiralty jurisdiction over a sexual assault aboard a cruise ship in a Bermuda port of call); Neely v. Club Med Mgmt. Servs., Inc., 63 F.3d 166, 179 (3d Cir. 1995) (en banc) (finding the location requirement of maritime jurisdiction was "readily satisfied" over a scuba diving incident in St. Lucia (quoting Grubart, 513 U.S. at 534)); Perforaciones Exploración Y Producción v. Marítimas Mexicanas, S.A. de C.V., 356 F. App'x 675, 678 (5th Cir. 2009) (per curiam) (exercising admiralty jurisdiction over an allision between two boats in Mexico's exclusive economic zone on the ground that the weight of authority "supports the view that there are no

7

clear territorial limits to federal maritime tort jurisdiction."); Smith v. Carnival Corp., 584 F. Supp. 2d 1343, 1347 (S.D. Fla. 2008) (holding that the territorial waters of the Cayman Islands are navigable waters for the purposes of maritime jurisdiction); Exter Shipping Ltd. v. Kilakos, 310 F. Supp. 2d 1301, 1311 (N.D. Ga. 2004) (finding jurisdiction over torts occurring in the territorial waters of Singapore and the United Kingdom).

Amigos relies on Victory Carriers, Inc. v. Law to argue "that maritime law governs only those torts occurring on the navigable waters of the United States." 404 U.S. 202, 205 (1971) (emphasis added). A handful of district courts have adopted that view, citing Victory Carriers. See, e.g., Dunham v. Hotelera Canco S.A. de C.V., 933 F. Supp. 543, 547 (E.D. Va. 1996); Sharma v. Skaarup Ship Mgmt. Corp., 699 F. Supp. 440, 448 (S.D.N.Y. 1988), aff'd on other grounds, 916 F.2d 820 (2d Cir. 1990); Campbell v. Uptowner Inns, Inc., No. 22-cv-0417, 2023 WL 2633615, at *2 (S.D.W. Va. 2023); St. Pierre v. Maingot, No. 01-cv-2281, 2002 WL 31655355, at *3 n.8 (E.D. La. 2002).

Amigos' reliance on Victory Carriers is misplaced. The Supreme Court had previously explained that the traditional language describing "jurisdiction [over] all torts arising . . . upon the navigable waters of the United States" was "not used restrictively." Pan. R. Co., 166 U.S. at 285 (noting that "torts originating within the waters of a foreign power may be the subject

8

of a suit" under American admiralty jurisdiction). Various maritime treatises also support the position that the location requirement may be satisfied even when the tortious act occurred in a foreign country's territorial waters. See, e.g., 2 C.J.S. Admiralty § 59 (2025) ("Maritime torts are every species of tort committed on the high seas or other navigable water, including navigable water of states of the United States and territorial waters of foreign powers."); 2 Am. Jur. 2d Admiralty § 69 (2025) ("A maritime tort may be within the ambit of American admiralty jurisdiction though it was committed in the territorial waters of a foreign power."); Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty 33 (2d ed. 1975) ("Occurrences on foreign navigable waters may also ground admiralty jurisdiction.").

Therefore, even though the incident took place in Belize's navigable waters, the location requirement is met here.

**B.   Connection Requirement**

Having found the location requirement met, the Court turns to the connection requirement. The connection requirement first asks whether the incident, described "at an intermediate level of possible generality," is "of a sort with the potential to disrupt maritime commerce." Grubart, 513 U.S. at 538. In this case, Susan was harmed after an employee on Amigos' vessel pushed her into the water where the vessel's propellers injured her body.

9

Many courts have held that a passenger injured by a vessel in navigable waters has the potential to disrupt maritime commerce when the passenger may require rescue and first aid. See, e.g., Taghadomi v. United States, 401 F.3d 1080, 1086 (9th Cir. 2005) (holding that the negligence of a United States Coast Guard rescue operation to recover victims thrown from a kayak by rough seas could disrupt maritime commerce); Balt. Gas & Elec. Co. v. Coastline Com. Contracting, Inc., 107 F.4th 264, 271 (4th Cir.) (explaining that the potential for aid and rescue missions has the potential to disrupt commercial shipping), cert. denied, 145 S. Ct. 985 (2024); In re Mission Bay Jet Sports, LLC, 570 F.3d 1124, 1129 (9th Cir. 2009) (noting that "a vessel from which a passenger goes overboard in navigable waters would likely stop to search and rescue, call for assistance from others," and otherwise disrupt maritime commerce); Donnelly v. Slingshot Sports LLC, 605 F. Supp. 2d 613, 617 (D. Del. 2009) (explaining that "rescue efforts and after-accident investigations can lead to disruption of maritime commerce").

The efforts to rescue Susan could have affected the ability of other vessels, including commercial ones, to navigate through the navigable waterway and could have required assistance from, or the diversion of, those vessels. Mink v. Genmar Indus., Inc., 29 F.3d 1543, 1546 (11th Cir. 1994) (explaining that the relevant inquiry is not whether maritime commerce was actually disrupted

10

but whether it had the potential to be). The first part of the connection requirement is met.

The connection element next asks whether "the 'general character' of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Florio v. Olson, 129 F.3d 678, 680 (1st Cir. 1997) (quoting Grubart, 513 U.S. at 534). The Supreme Court has held that the "the negligent operation" of "pleasure boats" on navigable waters has a substantial relationship to traditional maritime activity. Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674, 676 (1982). Here, Plaintiffs allege that Susan's injuries resulted from the negligent operation of the Amigos vessel by its captain and crew. This conduct includes the "general transport and care of passengers on a vessel on navigable waters," an activity long recognized as bearing a substantial relationship to traditional maritime activity. In re Petition of Germain, 824 F.3d 258, 274-75 (2d Cir. 2016); see Sinclair v. Soniform, Inc., 935 F.2d 599, 602 (3d Cir. 1991) (holding that "the transport and care of passengers bears a substantial relationship to traditional maritime activity").

Amigos relies on Delgado v. Reef Resort Ltd., 364 F.3d 642 (5th Cir. 2004), for the proposition that incidents involving recreational scuba diving do not meet the connection test. While Delgado does give pause, it is distinguishable. In Delgado, the deceased never surfaced during a scuba dive in open water. Id. at

11

644. The court concluded that the death did not result from a maritime tort: "The activity surrounding the recreational scuba diving activity in this case did not affect maritime commerce, and these activities are not connected with traditional maritime activity." Id. at 646. In contrast, the injury here stemmed from the vessel itself. Susan was pushed from the deck by a member of the crew and struck by the vessel's propeller that the boat captain failed to disengage. Such a serious injury had the potential to disrupt maritime commerce because of the need for emergency transport and care in navigable waters.

Accordingly, this Court finds that it has subject matter jurisdiction over the case, and the motion to vacate will not be granted on these grounds.

## II. Personal Jurisdiction

Amigos also contests that the Court had personal jurisdiction over it. "[A] federal district court may exercise either general or specific jurisdiction over a defendant." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016). Plaintiffs assert that this Court may exercise specific jurisdiction over Amigos.

Typically, an exercise of personal jurisdiction "must comply with the forum's long-arm statute" and "the requirements of due process." Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 122 (1st Cir. 2022). Amigos mentions Massachusetts' long-arm

12

statute in a footnote but focuses its challenge on the constitutional requirements for personal jurisdiction. A defendant may waive objections to personal jurisdiction, see id., and in any event, "the modest difference between [the Massachusetts long-arm statute and constitutional] requirements is not material here," Baskin-Robbins, 825 F.3d at 34. Thus, the Court moves directly to the constitutional analysis.

To comport with due process, specific jurisdiction requires that a defendant have sufficient "minimum contacts" with the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). In analyzing such contacts, the Court must consider three factors: relatedness, purposeful availment, and reasonableness. See Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 95 (1st Cir. 2024).[2]

---

[2] Although Plaintiffs invoke federal question jurisdiction under 28 U.S.C. § 1331, they do not explicitly rely on Rule 4(k)(2), which authorizes nationwide service in certain federal-question cases where the defendant is not subject to jurisdiction in any state. Consequently, the Court analyzes personal jurisdiction based on Amigos' contacts with Massachusetts. See United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 41 (1st Cir. 1999) (noting that a plaintiff seeking to invoke Rule 4(k)(2) must make a prima facie case for the applicability of the rule).

13

### A.    Relatedness

Amigos argues that relatedness is not satisfied because it did not act in Massachusetts and had no direct communications with Plaintiffs while they were in the state. Plaintiffs respond that Carballo, when he messaged Susan about diving with Amigos, was acting on Amigos' behalf and that this contact establishes relatedness.

To satisfy the relatedness prong, Plaintiffs must show "a demonstrable nexus between [their] claims and [the defendant's] forum-based activities, such that the litigation itself is founded directly on those activities." Adelson v. Hananel, 652 F.3d 75, 81 (1st Cir. 2011) (cleaned up). This "inquiry is to be resolved under 'a flexible, relaxed standard'" and "serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contact with the forum." Baskin-Robbins, 825 F.3d at 35 (first quoting Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994); and then quoting Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995)).

The relatedness prong is met here. The accident giving rise to Plaintiffs' claims occurred during a diving trip that was arranged, in part, while Susan was in Massachusetts with an agent of Amigos. During a conversation with Susan over Facebook, Carballo said that he worked for Amigos. When Susan asked about Amigos' diving prices, Carballo responded with a price list on Amigos

14

letterhead. Susan followed up with more questions that prompted Carballo to say that he would "ask" the next day and "get back to [her]." Dkt. 73-11 at 3. Although Amigos states that Carballo was not its employee and was not authorized to solicit customers, Amigos confirmed that Carballo could dive with Plaintiffs if they chose to book with Amigos and that they would receive a cash discount. See Daynard, 290 F.3d at 55 ("Whether or not an agent is initially authorized to act on behalf of a principal, the agent's actions may be attributed to the principal, for purposes of personal jurisdiction, if the principal later ratifies the agent's conduct."). Carballo transmitted Amigos' confirmation to Susan. Plaintiffs' claims arise from forum-based conduct, namely Amigos' solicitation of business through its agent via direct outreach to a Massachusetts resident.

### B.  Purposeful Availment

Plaintiffs argue that Amigos purposefully availed itself of Massachusetts by soliciting American customers, using WhatsApp to book dive trips, listing prices in U.S. dollars, and maintaining a United States-oriented website. Amigos counters that it has never maintained an office, bank account, or physical presence in Massachusetts and has not purposefully availed itself of the forum.

The purposeful availment prong requires that the defendant "purposefully availed itself of 'the privilege of conducting activities in the forum state, thereby invoking the benefits and

protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.'" Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008) (quoting Daynard, 290 F.3d at 61). "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n.18 (1985) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

Here, there is an arguable basis to find that a substantial connection with the forum exists to satisfy the purposeful availment prong. As described above, Carballo reached into Massachusetts through a days-long exchange with Susan. He identified himself as working for Amigos, responded with pricing on Amigos letterhead, confirmed that he had obtained approval from Amigos to dive with her, and offered her a discount. Amigos later confirmed these arrangements. Though Amigos argues that Carballo was never employed by them and, thus, that his acts should be considered "random" and "fortuitous," the chat suggests that Amigos answered Carballo's questions for Susan and participated in the ultimate solicitation of her business. See Fergus v. Ross, 79 N.E.3d 421, 425 (Mass. 2017) (explaining that a principal can ratify an agent's conduct through acquiescence or, once the principal has been made aware of the agent's conduct, failure to promptly disavow). Moreover, after the incident, Amigos publicly

16

posted a photograph including Carballo and labeled him as part of the "Amigos Staff and Crew." Dkt. 73-8 at 2.

Accordingly, Amigos could have foreseen the possibility of being haled into court in Massachusetts as a result of this contact, and this Court finds that Plaintiffs have satisfied the purposeful availment prong at this stage of the litigation. See Carrasquillo-Serrano, 991 F.3d at 38 (explaining that had the defendant raised its jurisdictional arguments "at the proper procedural juncture," rather than through a Rule 60(b)(4) motion, the arguments may have succeeded, "[b]ut there are . . . consequences for failing to assert rights in a timely manner").

## C. Reasonableness

Finally, the reasonableness prong turns on the five "gestalt" factors, which include:

> (1) the defendant's burden of appearing [in the forum], (2) the [forum's] interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 12 (1st Cir. 2018) (alterations in original) (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994)).

The first factor meaningfully weighs against a finding of personal jurisdiction when the defendant "can demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64. It is

burdensome for a Belizean company to appear in a United States court. However, this lawsuit was filed during the COVID-19 pandemic when much of the Court's proceedings occurred remotely. Ultimately, this factor weighs against exercising personal jurisdiction over Amigos, but not meaningfully so.

The second factor weighs decidedly in favor of jurisdiction. Massachusetts has a significant interest in providing a forum for its residents to seek redress for serious injuries caused by out-of-state actors. See Burger King Corp., 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (quoting McGee, 355 U.S. at 223)).

The third factor also weighs in Plaintiffs' favor. Plaintiffs are Massachusetts residents, and the Court "accord[s] deference to [Plaintiffs'] choice of a Massachusetts forum." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 718 (1st Cir. 1996).

As for the final two factors, the administration of justice "does not appear to cut in either direction," Ticketmaster-N.Y., 26 F.3d at 211, and the parties fail to identify any particular social policy disfavoring or favoring Massachusetts, see Baskin-Robbins, 825 F.3d at 41.

Ultimately, the gestalt factors "do not show that the exercise of jurisdiction over [Amigos] in Massachusetts would be so unfair or unreasonable as to raise constitutional concerns." Id.

Taken together, because there is an arguable basis that Plaintiffs' claims arise out of Amigos' forum-based conduct, that Amigos purposefully availed itself of the forum, and that exercising jurisdiction would not be constitutionally unreasonable, the Court finds that it may properly exercise specific personal jurisdiction over Amigos.

## ORDER

For the foregoing reasons, the Court **DENIES** Amigos' renewed motion to vacate (Dkt. 70).

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge